IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RAFAEL LIMA AND JAVIER GRACE, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CIVIL ACTION NO. 1:20-CV-00598-TFM-M |
| RANGER ENVIRONMENTAL SERVICES, LLC, ) ) ) ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMODANDUM OF LAW**

**COMES NOW** Defendant Ranger Environmental Services, LLC ("Ranger" or "Defendant"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, and respectfully moves this Court for entry of summary judgment in its favor as to Count II (Collective Action Claim for Failure to Pay Overtime in Violation of the FLSA: Unlawful Deductions) asserted against it by Plaintiffs Rafael Lima ("Lima") and Javier Grace ("Grace"), as there are no genuine issues of material fact and Defendant is entitled to a judgment as a matter of law. This motion is supported by the Complaint and all pleadings and papers before the Court, as well as the evidentiary materials filed simultaneously herewith.

**INTRODUCTION**

In Count Two of their Complaint, Plaintiffs assert a claim of unpaid overtime as a result of alleged unlawful deductions that were taken from their pay. Specifically, Plaintiffs allege the deductions that Ranger took to cover the cost of providing uniforms, training, and certifications to Plaintiffs caused them not to be paid at their overtime rate of pay for all hours worked over 40 in a week. (Doc. 46 at 505-06.) However, as set forth herein, Plaintiffs' unlawful deductions claim

fails as matter of law because the deductions at issue never reduced Plaintiffs' overtime wages. Specifically, under the FLSA, employers may make deductions for items (including uniforms, tools, etc.) from the amount by which an employee's straight time pay for 40 hours of work exceeds the amount that would be due if the employee had only been paid the minimum wage. In a week in which an employee works more than 40 hours, those same deductions can be made provided that they do not exceed the amount that could be deducted if the employee had only worked 40 hours. Given that Plaintiffs' straight time pay for 40 hours of work far exceeded the amount that would have been due if they were only paid the minimum wage, Ranger's small deductions for uniforms and training/certifications did not cause Plaintiffs to lose any overtime compensation. As such, Ranger is entitled to summary judgment on Count Two of Plaintiffs' Complaint.

## UNDISPUTED MATERIAL FACTS

1. Ranger is a family-owned industrial cleaning and environmental services company based out of Creola, Alabama, with branch offices in Birmingham and Decatur. (Declaration of Elena Turner ("Turner Dec."), attached hereto as Exhibit A, at ¶ 2.)

2. Lima and Grace were hired by Ranger to work at its Birmingham office in early December 2019. (*Id.* at ¶ 3.) Lima was hired as a Field Supervisor, and Grace was hired as a Field Technician. (*Id.*)

3. During their employment with Ranger, Lima was paid at the rate of $22.5/hour for all straight time work (*i.e.*, work up to 40 hours in a workweek), and Grace was paid at the rate of $16/hour for all straight time work. (*Id.* at ¶ 4.) Both Lima and Grace were paid at time-and-a-half of their regular rate of pay for any overtime work (*i.e.*, work over 40 hours in a workweek). (*Id.*)

2

4.      Given that his regular rate of pay was $22.5/hour, Lima's gross straight time wages were $900 in any week in which he worked 40 hours. As Grace's regular rate of pay was $16/pay, his gross straight time wages were $640 in any week in which he worked 40 hours. (Exs. 3 & 4 to Turner Dec.) In the payroll records, straight time hours are recorded as field and shop time. (Turner Dec. at ¶ 5.) Overtime hours are listed separately. (*Id.*)

5.      At the beginning of their employment with Ranger, Plaintiffs received and acknowledged in writing their acceptance of the terms in Ranger's Employee Handbook. (Deposition of Rafael Lima ("Lima Dep."), attached hereto as Exhibit B, at 19:3-19; Exs. 3 & 4 to Lima Dep., Deposition of Javier Grace ("Grace Dep."), attached hereto as Exhibit C, at 21:8 to 22:9, Ex. 17 to Grace Dep.) The Employee Handbook includes policies relating to uniforms and the employee escrow account. (Ex. 5 to Turner Dec.) With respect to uniforms, the Handbook includes a policy making clear that employees will be responsible for a portion of the cost of uniforms provided to them by Ranger and listing the costs of the uniforms. (*Id.*) In March 2020, Ranger implemented a new uniform policy that Plaintiffs received and acknowledged in writing. (Turner Dec. at ¶ 8; Lima Dep. at 100:1-14; Ex. 14 to Lima Dep.; Grace Dep. at 79:23 to 80:10; Ex. 21 to Grace Dep.) Under the new policy, employees were provided with multiple sets of new uniforms to wear to work that Ranger rented from a third-party provider. (*Id.*; Lima Dep. at 101:12-21.) The type of uniforms provided depended on the employee's job classification, but a Ranger company logo was on all uniforms. (Turner Dec. at ¶ 8.) The new policy expressly authorized Ranger to make weekly deductions of either $10 or $13 from each employee's pay to cover the costs of providing the rented uniforms. (Ex. 14 to Lima Dep.) The amount deducted reflected the cost to Ranger of providing the uniforms to the employees. (Turner Dec. at ¶ 8.)

6.      The Handbook also contains an Employee Escrow Account Policy explaining that $15/week will be deducted from the pay of new employees during the first year of their employment and placed in an escrow account until a total of $500 is deposited. (Ex. 5 to Turner Dec; Turner Dec. at ¶ 9.) The policy further explains that escrow account deductions are necessary to cover the cost of providing necessary training and certifications to new employees. (*Id.*) For employees who leave their employment with Ranger before their one-year anniversary date, the policy explains that the funds in the escrow account will be used to cover the costs incurred by Ranger in providing the training and certifications. (*Id.*) As such, if an employee leaves Ranger before his or her one year anniversary date, that employee's final paycheck includes a credit for the total amount of escrow account deductions that had been taken during his or her employment and a deduction for the actual cost of providing the training and certifications to that employee. (Tuner Dec. at ¶ 9.) If an employee remains employed by Ranger beyond his or her one year anniversary date, the amount in the escrow account is refunded back to the employee at termination and the employee is not responsible for the cost of the training/certifications. (*Id.*) The $15/week escrow account deduction reflects the reasonable cost to Ranger of providing training and certifications to new employees through TVTC Safety Training Centers ("TVTC"), the third-party training provider, over the first year of their employment. (*Id.*) Both Plaintiffs agreed to the Escrow Account Policy in writing at the beginning of their employment. (Lima Dep. at 19:20 to 20:19; Grace Dep. at 22:10 to 23:4.)

7.      Plaintiffs and other employees received safety training from TVTC, including various specific training courses that are required by Ranger's clients to obtain certifications to work at the clients' facilities. (Turner Dec. at ¶ 10; Lima Dep. at 105:11-20; Grace Dep. at 83:12

4

to 84:19.) Plaintiffs also received certification to enter client facilities through the training. (Lima Dep. at 19:20 to 20:19; 99:11 to 100:14; Exs. 3 & 14 to Lima Dep.; Grace Dep. at 21:8 to 23:4, 79:23 to 80:23; Exs. 17 & 21 to Grace Dep.) The employees retain the certifications even if they leave their employment with Ranger. (Turner Dec. at ¶ 10.) Ranger pays for the training provided by TVTC. (*Id.*)

8.  During their employment with Ranger, the deductions for the uniforms and the escrow account (even when combined) never exceeded $50 for any single workweek. The amounts deducted for the uniforms and the escrow account each workweek are reflected in Plaintiffs' payroll records. (Exs. 3 & 4 to Turner Dec.) Plaintiffs' bank records confirm that the net payment amounts reflected on Plaintiffs' payroll records were direct deposited into Plaintiffs' bank accounts by Ranger.[1] (Records from Wells Fargo Bank, pertinent portions of which are attached hereto as Exhibit D; Records for Green Dot Bank, pertinent portions of which are attached hereto as Exhibit E.)

## ARGUMENT

Plaintiffs' contention that the small deductions taken from their pay for uniforms and training/certification costs were somehow illegal kickbacks is simply wrong. The FLSA makes it clear that deductions of the type at issue are perfectly permissible so long as they do not cut into the minimum or overtimes wages due under the FLSA. As set forth herein, the deductions at issue never caused Plaintiffs' minimum or overtime wages to be reduced.

---

[1] On one occasion, the amount deposited by Ranger into Lima's bank account exceeded the amount reflected on his pay stub. Specifically, for the supplemental overtime payment issued for the pay period ending on February 3, 2020, Lima's pay stub reflects a net payment of $362.90 but his bank records show that $444.20 was deposited. (*See* Ex. 3 to Turner Dec. at 13 and Ex. D.) This overpayment appears to be the result of a data entry error by Ranger in entering the amount of the deposit.

1.      **Explanation of Regulatory Terminology.**

As an initial matter, it is important to understand the terminology used in the applicable statutes and regulations. Under the FLSA, the legal standard applicable to deductions depends to a certain extent on whether the deduction at issue is for an item that qualifies as "board, lodging, or other facilities" under Section 3(m) of the FLSA. 29 U.S.C. § 203(m). "Section 203(m) provides that a 'wage paid to any employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employee." *Ramos-Barrientos v. Bland*, 661 F.3d 587, 595 (11th Cir. 2011) (quoting 29 U.S.C. § 203(m)). "Accordingly, the employer may lawfully deduct from an employee's pay the reasonable cost of employer provided housing and meals, *even if that deduction results in the employee's cash pay falling below the statutory minimum*," *Id.* (internal quotations omitted, emphasis added). Examples of facilities that meet the requirements of Section 203(m) include board, lodging, meals, and fuel. 29 C.F.R. § 531.32.

The cost of furnishing items that are primarily for the benefit or convenience of the employer do not qualify as facilities under Section 203(m). 29 C.F.R. § 531.3(d)(1). According to Department of Labor regulations, examples of such non-Section 203(m) items include "tools of the trade and other materials and services incidental to carrying on the employer's business," *id.* § 531.3(d)(2), and "charges for rental of uniforms where the nature of the business requires the employee to wear a uniform." *Id.* § 531.32(c).

Whether a deduction is for an item that qualifies as a "facility" under Section 203(m) only matters if the deduction causes the employee's pay to fall below the minimum wage. That is

because deductions may be made for Section 203(m) facilities "even if that deduction results in the employee's cash pay falling below the statutory minimum." *Ramos-Barrientos*, 661 F.3d at 595. On the other hand, deductions for items that do not qualify as Section 203(m) facilities may not "cut into the minimum or overtime wages required to be paid under the [FLSA]." 29 C.F.R. § 531.35. However, it does not follow that all deductions for items that are not facilities under Section 203(m) are barred by the FLSA. Rather, it simply means that those deductions may not cause the employee's pay to fall below the minimum wage or reduce any overtime compensation that is due. *Id.*

> 2. **The deductions at issue were permissible under the FLSA as they did not cut into the minimum or overtime wages paid to Plaintiffs in any workweek.**

During their employment with Ranger, Plaintiffs provided written authorization for Ranger to make deductions from their pay for the cost of uniforms that were provided to Plaintiffs and for the cost of paying for the training and certifications that Plaintiffs required to perform work at the facilities of Ranger's various clients.[2] (Lima Dep. at 19:20 to 20:19; 99:11 to 100:14; Exs. 3 & 14 to Lima Dep.; Grace Dep. at 21:8 to 23:4, 79:23 to 80:23; Exs. 17 & 21 to Grace Dep.) Indeed, Plaintiffs testified that they signed the written authorizations for the deductions to be taken from their pay and that they understood the deductions were for the costs of the uniforms and training/certifications. (*Id.*) Specifically, Plaintiffs authorized fifteen dollars ($15) to be deducted from their pay every week to be placed in an escrow account to pay for the cost of the training and

---

[2] The uniform deductions reflect the reasonable cost to Ranger of providing the uniforms to its employees, including the cost incurred in paying the third-party provider for the uniforms. (Turner Dec. at ¶ 8.) Similarly, the $15/week escrow account deduction reflects the reasonable cost to Ranger of providing training and certifications to new employees through TVTC, the third-party training provider, over the first year of their employment. (*Id.* at ¶ 9.) Further, the deductions are made regardless of whether an employee works overtime in any particular workweek. (Exs. 3 & 4 to Turner Dec.)

7

certifications, and also authorized small deductions (which varied depending on the type of uniforms they received) to be deducted to cover the costs of the uniforms provided to them. (*Id.*) Plaintiffs admit that they received the uniforms and the training and certifications. (Lima Dep. at 100:15 to 101: 21; 102:23 to 106:2; Grace Dep. 82:12-15, 83:12 to 84:20.)

Plaintiffs suggest that these deductions deprived them of overtime compensation during weeks when they worked more than 40 hours. In support of this argument, Plaintiffs contend that the deductions constitute illegal kickbacks under 29 C.F.R. § 531.35, which relates to deductions taken from employee pay for the employer's benefit for non-Section 203(m) items (*i.e.*, tools required to allow the employee to perform the job). However, § 531.35 by its own terms only applies when a deduction "cuts into the minimum or overtime wages required to be paid [to the employee] under the [FLSA]." 29 C.F.R. § 531.35. As such, "kickbacks are not *per se* illegal, but only when such deductions deprive an employee of the federally mandated minimum wage or overtime." *Cudnik v. W.L. York, Inc.*, No. H-20-2998, 2021 WL 3674972, at *2 (S.D. Tex. Feb. 8, 2021).

Indeed, the Eleventh Circuit has made clear that 29 C.F.R. § 531.35 only applies if the deduction for an expense primarily for the employer's benefit "reduces an employee's wage below the statutory minimum." *Ramos-Barrientos*, 661 F.3d at 595; *see also Arriaga v. Fla. Pacific Farms, LLC*, 305 F.3d 1228, 1236 (11th Cir. 2002) ("An employer may not deduct from employee wages the cost of facilities which primarily benefit the employer *if such deductions drive wages below the minimum wage*.") (emphasis added). Specifically, in applying § 531.35, the Eleventh Circuit in *Arriaga* explained that requiring an employee to pay for the cost of tools required to perform his job would be a FLSA violation "in any workweek when the costs of such tools

8

purchased by the employee *cuts into the minimum wage or overtime wages required by the Act*." 305 F.3d at 1237 n.10 (emphasis added).

The deductions at issue did not cause Plaintiffs' pay to fall below the minimum wage in any week or reduce Plaintiffs' overtime compensation. Indeed, it is undisputed that Plaintiffs were paid above the minimum wage throughout their employment. (Lima Dep. at 63:6-8.) Further, because Plaintiffs' regular hourly rates were well above the federal minimum wage, the deductions never affected Plaintiffs' overtime compensation.

Plaintiffs seem to believe that any deductions for uniforms or training/certifications in a week in which Plaintiffs worked more than 40 hours would necessarily cut into their overtime pay. However, Plaintiffs' belief is contradicted by the plain language of the applicable regulations, case law, and the Department of Labor's guidance.

As an initial manner, the regulations that follow § 531.35 describe the circumstances in which deductions may be made from an employee's pay in both non-overtime and overtime workweeks. For weeks in which an employee works 40 or fewer hours, 29 C.F.R. § 531.36(b) explains that the employer may make deductions for non-Section 203(m) items that primarily benefit the employer, "if the employee nevertheless received the required minimum wage in cash free and clear." Indeed, the regulation explains that "where an employee is employed at a rate *in excess* of the applicable minimum wage and during a particular workweek works 40 hours for which the employee receives at least the minimum wage free and clear, the employer having deducted from wages for facilities furnished, whether such deduction meets the requirement of section [203(m)] . . . need not be considered, since the employee is still receiving, after the deduction has been made, a cash wage of at least the minimum wage for each hour worked." *Id.* §

9

531.36(b) (emphasis added). As such, if an employee's regular rate of pay exceeds the applicable minimum wage, the employer may make deductions so long as the employee is still paid at least the minimum wage for each hour worked. *Id.* at 531.36(a); *see also Lira v. Arrow Air, Inc.*, No. 05-23273, 2006 WL 8433511, at *2 (S.D. Fla. Apr. 18, 2006) (finding that deductions for uniforms did not violate the FLSA because the plaintiff's wages were always above the minimum wage for all hours worked).

The regulatory scheme goes on to explain in 29 C.F.R. § 531.37 the manner in which deductions may be made in weeks in which an employee works in excess of 40 hours. Specifically, § 531.37 states:

> It is the Administrator's opinion that deductions may be made . . . on the same basis in an overtime workweek as in non-overtime workweeks (see § 531.36), if their purpose and effect are not to evade the overtime requirements of the Act or other law, providing the amount deducted does not exceed the amount which could be deducted if the employee had only worked the maximum number of straight-time hours during the workweek. Deductions *in excess of this amount* for such articles as tools and other articles which are not "facilities" within the meaning of the Act are illegal in overtime workweeks as well as in nonovertime workweeks.

29 C.F.R. § 531.37(a) (emphasis added). In other words, even if the deduction is for an item that does not qualify as a "facility" under Section 203(m) and primarily benefits the employer (tools, uniforms, etc.), the employer may make the deduction in an overtime workweek so long as the deduction does not exceed the amount that could be deducted if the employee had only worked 40 hours.[3]

For example, in *Castillo v. Case Farms of Ohio*, the court rejected an argument by plaintiffs that any deduction from their pay for tools in an overtime workweek violated the FLSA. 96 F.

---

[3] The deductions at issue did not have the purpose or effect of evading the overtime requirements of the FLSA because they were made in the same amount in both overtime and non-overtime workweeks. (Exs. 3 & 4 to Turner Dec.)

10

Supp. 2d 578, 639-40 (W.D. Tex. 1999). Specifically, the court noted that "[t]he requirement that wages be paid 'free and clear,' does not mean, however, that deductions from a worker's pay are *per se* illegal. Deductions for necessary equipment or supplies are illegal when such deductions deprive a worker of the federally mandated minimum wage or overtime pay." *Id.* at 637 (citing 29 C.F.R. § 531.35). The *Castillo* Court then explained that the plaintiffs had made a fundamental error in assuming that an overtime violation occurred whenever a deduction was taken from their pay during a week in which they worked overtime. In applying § 531.37, the court explained:

> The plaintiffs ignored an employer's right to make deductions from the straight time portion of the employee's wages as long as those deductions do not bring the employee below the minimum wage. That is, if a worker's straight time salary is more than minimum wage, that "extra" payment creates, in effect, a buffer for deductions by an employer.

*Id.* at 639. In other words, when an employee is paid a straight time rate that is higher than the minimum wage, a "buffer" is created for any deductions by the employer. *Id.* at 640. As such, given that deductions may be made on the same basis in an overtime workweek as in a non-overtime workweek, an employer may make deductions from the straight time wages (regardless of whether the employee worked overtime or not in a given workweek) so long as those deductions do not bring the employee's straight time pay below the minimum wage for each hour worked.

The court in *Barvinchak v. Indiana Regional Medical Center* reached the same conclusion. In that case, the plaintiffs (like the plaintiffs in this case) argued that any uniform expenses born by the plaintiffs in an overtime workweek that resulted in any reduction in gross pay was an automatic FLSA violation. No. 3:2006-69, 2008 WL 1847163, at *4 (W.D. Pa. Apr. 23, 2008). In rejecting this argument, the Court explained as follows:

> The Plaintiff's argument with respect to weeks including overtime pay is that *any* purchase of a uniform would result in a loss of overtime pay in violation

11

> of FLSA. [] Such a reading of the Department of Labor's regulations would otherwise require employers to reimburse employees for uniform expenses that do not result in loss of one's minimum wage and overtime pay. Under such a reading of the regulation, an employee could purchase a uniform in an overtime week and claim a FLSA violation every time they did so because they could claim it reduces their overtime remuneration or their *regular* wage rate.
>
> …
>
> To explain the Court's reasoning, an example is appropriate. If minimum wage is assumed to be $5 an hour and if one works 8 hours a day for five days a week, that person would earn $200 for the workweek. Now, if one assumes that a person needing to buy a uniform pays for a uniform in that workweek, a violation of FLSA certainly exists even if the uniform was $1 because the wage of the worker dips below the minimum wage after that $1 expense. *Under different circumstances, let us assume that an employee in the same job, but with more seniority is making $10 an hour, $80 in a day, $400 a week and must buy a uniform. This senior employee could spend up to $200 in uniforms before his wage becomes lower than the minimum wage. Taking the hypothetical a step further, let us also assume the senior employee works five hours of overtime in that week. The overtime pay due to him is time and a half, that is $15 per hour of overtime resulting in an overtime pay totaling $75. The senior employee's regular pay and overtime pay for that week would be a total of $475. According to the Plaintiff if the senior employee pays for any uniform in an overtime week, it results in a violation of FLSA. This is incorrect. The senior employee could still spend $200 in uniform costs resulting in a balance of $275, which is equal to the total amount of the minimum wage and overtime wages due to the senior employee.*

*Id.* at *5 (emphasis added). In other words, the *Barvinchak* Court found that when an employee's regular straight time rate of pay exceeds the minimum wage, employers may require employees to pay for the costs of uniforms up to the amount that their straight time pay exceeds the amount that would have been due if they had only been paid the minimum wage for each hour worked. As such, the amount of straight time pay in excess of the minimum wage creates a buffer for any deductions, even when the employee works overtime.

In its informal guidance interpreting the applicable regulations, the Department of Labor ("DOL") has agreed that employers may make deductions for non-Section 203(m) facility items

(*i.e.*, tools, uniforms, etc.) in overtime workweeks provided that the deduction does not exceed the amount that could be deducted if the employee had only worked a 40-hour week. For example, in an opinion letter relating to deduction for the costs of uniforms and safety equipment, the DOL explained:

> In nonovertime workweeks, an employer may take bona fide deductions for such non-section 3(m) costs to the extent that they do not result in the employees receiving less than the minimum wage in cash free and clear for their hours worked. 29 C.F.R. 531.36(b). In addition, in accordance with an agreement or understanding with the employees, the employer may also take these deductions in overtime workweeks, provided that all straight time hours are paid at not less than the minimum wage in cash free and clear, and that the regular rate is calculated before any deductions are made. 29 C.F.R. 531.37.

DOL Opinion Letter Fair Labor Standards Act, 1997 WL 997736, at *1 (Jan. 21, 1997); *see also* DOL Opinion Letter Fair Labor Standards Act, 1973 WL 36845, at *1 (Oct. 1, 1973) ("As indicated in §§ 531.36 and 531.37, when deductions from pay of this kind are made in overtime weeks, the amount thereof is limited to the amount which could be deducted if the employee had only worked 40 hours.").

Both Plaintiffs' straight time wage far exceeded the amount that would have due if they were only paid the minimum wage, thus creating a buffer for the deductions at issue. If Plaintiffs had only been paid the federal minimum wage of $7.25/hour for all straight time hours, they would have only been entitled to gross pay of **$290/week** if they worked 40 hours in a given week ($7.25 x 40 = $290). However, during their employment with Ranger, Plaintiffs' hourly rate of pay was well in excess of the federal minimum wage. Specifically, Plaintiff Lima was paid $22.5/hour and Plaintiff Grace was paid $16/hour for all straight time work (*i.e.* up to 40 hours per week). (Turner Dec. at ¶ 4.) As such, if Lima worked 40 hours in a week, his gross pay was **$900** ($22.5 x 40 = $900), and Grace's gross pay for working 40 hours in a week was **$640** ($16 x 40 = $640).

13

Therefore, in a week in which Plaintiffs worked 40 hours, Lima's weekly pay exceeded the required minimum by **$610** ($900 - $290 = $610) and Grace's weekly pay exceeded the minimum by **$350**. The amount by which their weekly pay for straight time work exceeded the minimum created a buffer from which deductions could be made without reducing their pay below the minimum wage and without reducing any overtime compensation. *See Castillo*, 96 F. Supp. 2d at 640.

Plaintiffs' payroll records confirm that Plaintiffs, even after the deductions for uniforms and training/certifications, were paid at least the minimum wage for all hours worked up to 40 hours and time-and-a-half for all overtime hours in those weeks where Plaintiffs worked in excess of 40 hours. The standard deduction for the cost of training/certifications (*i.e.*, escrow account) was $15/week for both Plaintiffs. (Exs. 3 & 4 to Turner Dec.) The uniform deduction varied with the type of uniform used but was always less than $30. (*Id.*) As such, even if the deductions are combined, **less than $50/week** was deducted from Plaintiffs' pay for training/certifications (*i.e.*, escrow deduction) and uniforms.

As set forth above, Plaintiffs' gross straight time pay for 40 hours of work exceeded the amount that would have been due if they had only been paid minimum wage by $610 for Lima and $350 for Grace. In the payroll records, the weekly deductions for the training/certification costs are labeled "Escrow" and the deductions for uniforms are labeled "UniformsTus." (Turner Dec. ¶ 5.) Given that Ranger could have deducted up to $610 for Lima and $350 for Grace in an overtime workweek, the less than $50 in combined deductions for uniforms and training/certifications did not deprive Plaintiffs of any overtime compensation.[4]

---

[4] In their last week of employment, the amount that had been deducted for the escrow account was credited back to both Plaintiffs and the actual costs of the training/certifications that Ranger

In other words, the deductions were always well below the buffer amounts by which Plaintiffs' straight time wages exceeded the minimum wage. As set forth in 29 C.F.R. § 531.36(a), Ranger could make deductions from Plaintiffs' pay for non-Section 203 facilities in a non-overtime workweek so long as Plaintiffs were paid at least the minimum wage for each hour worked. Similarly, pursuant to 29 C.F.R. § 531.37(a), Ranger could make deductions "on the same basis" in an overtime workweek (*i.e.*, where the Plaintiffs worked more than 40 hours) provided that the amount deducted did not exceed the amount that could be deducted if the Plaintiffs had only worked 40 hours. The evidence shows that the deductions at issue never exceeded the amount that could be deducted if Plaintiffs had only worked 40 hours in any given week. As such, Ranger could make those deductions from Plaintiffs' pay in an overtime week on the same basis as in a non-overtime week.

As the evidence shows that the deductions at issue did not cause reduce Plaintiffs' overtime compensation, Defendant is entitled to summary judgment on Plaintiff's unlawful deductions claim (Count II of the Complaint).

## CONCLUSION

**WHEREFORE, PREMISES CONSIDERED**, Defendant Ranger Environmental Services, LLC, pursuant to Fed. R. Civ. P. 56, respectfully requests that the Court grant summary judgment to Defendant on Count II of Plaintiffs' Complaint (Unlawful Deductions) as there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law.

---

provided to Plaintiffs was deducted. When the deduction for the actual costs is offset by the credit of the amount in the escrow account, Lima's final paycheck has a net credit of $46 ($515 - $469 = $46) for training costs and Grace's final paycheck has a net deduction of $189 ($689 – $500 = $189) for training costs (which is well below the $350 deduction limit for Grace described herein). (Ex. 3 to Turner Dec. at 48 & Ex. 4 to Turner Dec. at 46.)

Respectfully submitted,

*/s/ Joshua S. Thompson*
Carter H. Dukes
Joshua S. Thompson
William E. Stevenson
*Attorneys for Defendant*
*Ranger Environmental Services, LLC*

**OF COUNSEL:**
SCOTT DUKES & GEISLER, P.C.
211 22nd Street North
Birmingham, Alabama 35203
Telephone: (205) 251-2300
Facsimile:  (205) 251-6773
Email: cdukes@scottdukeslaw.com
          jthompson@scottdukeslaw.com
          wstevenson@scottdukeslaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2022, I filed the foregoing using the CM/ECF electronic filing system which will send notification to the following counsel of record:

Jody Forester Jackson, Esq.
Jackson and Jackson
2100 Southbridge Pkwy
Suite 650
Birmingham, Alabama 35209

Mary Bubbett Jackson, Esq.
Jackson and Jackson
201 St. Charles Ave.
Suite 2500
New Orleans, Louisiana 70170
*Admitted pro hac vice*

*/s/ Joshua S. Thompson*
Of Counsel

110202