## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| RAFAEL LIMA AND JAVIER GRACE, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | CIV. ACT. NO. 1:20-cv-598-TFM-N |
| ) | |
| RANGER ENVIRONMENTAL ) | |
| SERVICES, LLC ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On July 12, 2023, the parties filed their *Joint Motion to Approve Settlement* (Doc. 72, filed 7/12/23) and *Joint Supplemental Motion to Approve Settlement* (Doc. 73, filed 10/26/23) which includes a settlement agreement between the named Plaintiffs and Defendant. For the reasons discussed below, the motion is **DENIED** and the settlement is disapproved due to the overbreadth of certain terms.

### I.   APPLICABLE LAW

This case is a Fair Labor Standards Act ("FLSA") case which is brought by these plaintiffs as a proposed collective action. As such, a "joint motion for approval [is] necessary because, unlike most claims, a FLSA claim can only be settled by (1) a payment supervised by the Department of Labor under 29 U.S.C. § 216(c) or (2) by a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Padilla v. Smith*, 53 F.4th 1303, 1308 n. 8 (11th Cir. 2022) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982) (internal quotation marks omitted)); *see also Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306-08 (11th Cir. 2013) (stating same

and applying to former employers). Evaluating the fairness of an FLSA compromise includes an assessment of: 1) the existence of fraud or collusion behind the settlement; 2) the complexity, expense and likely duration of the litigation; 3) the stage of the proceedings and amount of discovery completed; 4) the probability of plaintiff's success on the merits; 5) the range of possible recovery; and 6) the opinions of the counsel. *Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1241 (M.D. Fla. 2010). Additionally, when a settlement agreement includes attorney's fees and costs, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). "[T]he parties requesting review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute." *Dees*, 706 F.Supp.2d at 1241.

## II.     DISCUSSION AND ANALYSIS

Pl Lima has agreed to settle his claims for $2,250. $1,000 of this settlement is designated as wages, with $1,250 designated as compensatory and liquidated damages. Grace has agreed to settle his claims for $4,300. $1,500 of this settlement is designated as wages, with $2,800 designated as compensatory and liquidated damages. Plaintiffs' counsel are receiving $12,000 for attorneys' fees and $5,000 for expenses. The payments would be made within 30 days of the approval of this settlement, as well as the receipt of a completed tax forms and completed conditional payment letters from the Center for Medicare and Medicaid Services and any applicable Medicare Advantage Plan confirming that there are no Medicare liens or liens asserted by a Medicare Advantage Plan relating to medical expenses incurred by Lima relating to the damages alleged in this matter. *See* Doc. 72-1, Settlement Agreement and Release. On October 24, 2023, the parties received the letter from the Center for Medicare and Medicaid Services that

there are no liens asserted by a Medicare Advantage Plan relating to medical expenses incurred by Lima.

This settlement was negotiated at arm's length with the aid of an experienced mediator who has experience litigating wage and hour disputes. The Court is also well familiar with the strengths and weaknesses of the claims and defenses as this case was extensively briefed through the summary judgment matters which the Court ruled upon. The Court agrees with the assessment contained within the joint motion for approval of settlement as to the strengths and weaknesses for each side to include the possibility for extensive litigation costs in the future. Generally speaking, the Court finds the amounts reasonable.

Additionally, having reviewed the request for attorneys' fees, the Court also finds that given the current posture of the case, the amount sought is generally reasonable as counsel already reduced their amount by approximately 75% (which considering the claims dismissed by the Court on the summary judgment, is an appropriate measure).

However, having reviewed the settlement agreement, the Court finds that it cannot be approved as written due to the inclusion of a highly disfavored provision the encumbers the approval of FLSA settlement agreements. Specifically, "the proposed release is pervasive (not limited to FLSA claims) and unbounded, covering a dizzying array of claims, known and unknown which courts have found to be an anathema to the FLSA." *Laird v. Jiya Jeel, LLC*, Civ. Act. No. 1:22-cv-259-KD, 2022 U.S. Dist. LEXIS 224192, 2022 WL 17650573 (S.D. Ala. Dec. 13, 2022) (internal modifications and citations omitted). Specifically, the settlement agreement states the following:

> 4. <u>Release of Claims for Named Plaintiffs</u>. In exchange for the promises contained herein, Plaintiffs release and discharge the Defendant, their representatives and assigns, as well as their predecessors, successors, parent and subsidiary entities, affiliates, related entities, and past or present attorneys,

directors, officers, employees, and agents (together "Releasees") from any and all claims and rights of any kind that they may have, whether now known or unknown, including, but not limited to, those arising out of or in any way connected with their employment with Defendants from the beginning of time through the execution of this Agreement.  These claims and rights released include, but are not limited to, claims under Title VII of the Civil Rights Act of 1964 (as amended); 42 U.S.C. § 1981 (as amended); the Age Discrimination in Employment Act; the Equal Pay Act; the Americans with Disabilities Act (as amended); Sections 503 and 504 of the Rehabilitation Act of 1983; the Family Medical Leave Act; the Employee Retirement Income Security Act; the Occupational Safety and Health Act; the Workers' Adjustment and Retraining Notification Act, as amended; any claims under the Fair Labor Standards Act, including claims for overtime compensation, minimum wages, liquidated damages, penalties and interest, attorney's fees and costs under the FLSA or any other applicable federal state, or laws (including statutory and common law claims for breach of contract, unjust enrichment or other common law claims relating to wage and hour issues); any state civil or statutory laws, including any and all human rights laws, any other federal, state or local fair employment statute, code or ordinance, common law, contract law, tort, and any and all claims for attorneys' fees and costs.

       5.    <u>Covenant Not to Sue</u>.  Plaintiffs covenant not to sue any of the Releasees for any claim Plaintiffs release in this Agreement.

       6.    <u>Non-Interference and Continued Right to Participate in Agency Proceedings</u>.  Nothing in this Agreement shall interfere with the Plaintiffs' right to file a charge, cooperate or participate in an investigation or proceeding conducted by the U.S. Equal Employment Opportunity Commission, the U.S. Securities and Exchange Commission, or any other federal, state, or local regulatory or law enforcement agency.  However, Plaintiffs expressly disclaim any damages for any claim made on their behalf with respect to any proceeding with the EEOC or any state counterpart to the EEOC.  Further, nothing in this Agreement shall prohibit Plaintiffs from seeking or obtaining a whistleblower award from the Securities and Exchange Commission pursuant to Section 21F of the Exchange Act.  This Agreement does not include any claims that cannot by law [be] released through this Agreement, but the Parties intend that it be construed as broadly as lawfully possible.

       7.    <u>Dismissal of Action with Prejudice</u>. [portion omitted by Court][1] Plaintiffs agree that they will not bring any other legal action based on (a) the alleged acts or omissions which led to the filing of this lawsuit; or (b) acts or omissions that occurred prior to the execution of this Agreement…

---

[1] The Court omits portions to get to the section that raises the related concerns from the preceding paragraphs.

Doc. 72-1 at 4-5[2] (paragraphs 4-7).

> [I]n an FLSA action, neither party typically attempts to value the claims not asserted by the pleadings but within the scope of a pervasive release—that is, those "known and unknown," or "past, present, and future," or "statutory or common law," or other claims included among the boiler plate, but encompassing, terms unfailingly folded into the typical general release. Absent some knowledge of the value of the released claims, the fairness of the compromise remains indeterminate.
>
> In sum, a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer. In the typical case, no unknown claim accrues to the employee and the pervasive release effects no change to the legal relationship of the parties. In other words, in the typical case, the pervasive release is superfluous and can be stricken without objection from either the employee or the employer. In the occasional case, an unknown claim accrues to the employee and the employer receives a release from a contingent liability in exchange for a modest payment of wages unconditionally owed to the employee. The employer who obtains a pervasive release receives either nothing (if no claim accrues) or a windfall at the expense of the unlucky employee. In either instance, the employee bears the risk of loss, and the employer always wins—a result that is inequitable and unfair in the circumstance. The employer's attempt to "play with house money" fails judicial scrutiny.

*Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (citations and footnote omitted).

In the present case, although the parties' compromise appears otherwise reasonable, the pervasive and unbounded scope of the release is unfair and precludes a valid evaluation of the compromise. A compromise of a FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny. Accordingly, the Court must currently disapprove of the settlement and deny the motion for approval.

## IV.   CONCLUSION

Based on the above, the *Joint Motion to Approve Settlement* (Doc. 72) and *Joint Supplemental Motion to Approve Settlement* (Doc. 73) are **DENIED,** and the settlement agreement

---

[2] The Court uses the pages numbers of the settlement agreement itself and not the PDF page of the exhibit as it includes a cover page which gives it an additional page.

is **REJECTED**.

On or before **November 17, 2023**, the parties must either (1) move for approval of an amended settlement agreement which remedies the issues noted above or (2) submit a joint status report proposing the manner to proceed with this case to include a case management schedule.

**DONE** and **ORDERED** this 2nd day of November 2023.

                                         s/Terry F. Moorer
                                         TERRY F. MOORER
                                         UNITED STATES DISTRICT JUDGE